IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| H.R, a minor, by his parents and next friends, Julie Eddy Rokala and Mark Rokala, 3824 Harrison St., N.W., Washington, D.C. 20015, <br><br>and<br><br>JULIE EDDY ROKALA and MARK ROKALA 3824 Harrison St., N.W., Washington, D.C. 20015,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA, A Municipal Corporation, One Judiciary Square, 441 Fourth Street, N.W., Washington, D.C. 20001,<br><br>　　　Defendant. | **Civil Action No. _____** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1.     This is an action brought by Julie Eddy Rokala and Mark Rokala ("the parents"), in their own right and on behalf of their son, H.R., alleging that the District of Columbia Public Schools ("DCPS" or "school system"), failed to provide H.R. with the free appropriate public education ("FAPE"), to which he is entitled under the Individuals With Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400 *et seq.* DCPS denied this student a FAPE when it failed to propose an appropriate Individualized Education Program ("IEP"), and placement for him for the 2020-21 school year. The Hearing Officer who heard the administrative Due Process appeal and who decided the action compounded these violations when he failed to recognize the case was mott and then ignored the parents' compelling evidence and witnesses, misapplied controlling law,

1

and denied the requested relief.  In doing so, the Hearing Officer excused defendant's failure to adhere to applicable authorities governing special education and the provision of FAPE by denying the parents their requested relief of funding and placement at the Lab School of Washington ("Lab School").  Due to any of these errors, the Court should reverse the Hearing Officer's Decision.

## Jurisdiction

2.This Court has jurisdiction pursuant to the IDEA, 20 U.S.C. §§ 1400 *et seq*., and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.Plaintiffs have exhausted their administrative remedies and seek to reverse the order of a Hearing Officer in the Office of Dispute Resolution of the Office of the State Superintendent of Education, Case Number 2020-0151 (June 21, 2021).

## Parties

4.H.R. is an eleven-year-old, educationally disabled student who at all times relevant to this action resided in the District of Columbia.  His parents, Julie Eddy Rokala and Mark Rokala, bring this action on H.R.'s behalf and in their own right.

5.The District of Columbia is a municipal corporation receiving federal funds under the IDEA.  20 U.S.C. §§ 1400 *et seq*.  DCPS is a local educational agency as defined by 20 U.S.C. § 1401, and as a part of the District of Columbia, receives financial assistance from the United States Department of Education.  DCPS is responsible for complying with federal law with respect to the provision of a FAPE to each educationally disabled child in the District of Columbia.

## Factual Allegations

6. H.R. is a student at the Lab School of Washington ("Lab"), in Washington, D.C. and has been diagnosed with an Attention Deficit/Hyperactivity Disorder, Combined Presentation ("ADHD"), a Developmental Coordination Disorder, and a Specific Learning Disability with Impairment in Reading.

7. District of Columbia Public Schools ("DCPS" or "the school system"), has found H.R. eligible for special education services as a student with Multiple Disabilities, including an Other Health Impairment ("OHI"), due to his ADHD and a Specific Learning Disability ("SLD"), with impairment in reading.

8. H.R. began formal schooling at the Capitol Hill Day School ("CHDS"), a private preK-8 school located in Washington, D.C. H.R. repeated Kindergarten due to concerns that he was not socially, emotionally, behaviorally, or academically ready for the increased structure and expectations of first grade.

9. H.R. began the 2017-18 school year in first grade at CHDS. He required more one-on-one support from his teacher to remain on task and his mother expressed concerns that he was still behind his peers academically, particularly in reading. He experienced significant challenges with word reading, fluency, and comprehension.

10. In December 2017 and January 2018, H.R. underwent a comprehensive neuropsychological evaluation by Dr. Julie Newman at Children's National Medical Center. Dr. Newman noted symptoms of hyperactivity and impulsivity, both verbal and behavioral, warranting a diagnosis of ADHD.

11. Dr. Newman evaluated H.R.'s academic skills and found that, "the severity of his reading challenges exceeds that which may be explained by attention challenges alone," and diagnosed him with a Specific Learning Disability with impairment in reading. She also found

that H.R. continued to present with challenges with coordinated motor movements, affecting both fine and gross motor skills, and also diagnosed him with a Developmental Coordination Disorder.

12. Dr. Newman made several recommendations including that H.R. be provided academic supports through an IEP coded jointly as a student with an Other Health Impairment due to his ADHD and a Specific Learning Disability with impairment in reading. When considering his school placement, she stated that, "H.R. would be best served by a private school with particular expertise in educating children with learning differences, such as the Lab School or a similar program."

13. Dr. Newman provided a comprehensive list of classroom and testing accommodations and recommended a research-based reading intervention delivered in a small group or individual setting, such as *Orton-Gillingham, Lindamood Bell, Seeing Stars, Phonographix*, or the *Wilson program*.

14. Following Dr. Newman's report, the parents initiated the special education eligibility process with DCPS after CHDS determined it could no longer support his needs. The parents applied to Lab School, as well as some other nonpublic, full-time special education schools, in anticipation of the 2018-19 school year. H.R. was accepted by Lab in the spring of 2018.

15. On July 27, 2018, the DCPS team proposed ten hours of pull-out support, five hours of support in the general education classroom, and four hours per month of Occupational Therapy ("OT"), services.

16. In January of 2019, H.R.'s parents filed a Due Process Appeal and a hearing was held in April 2019. On May 24, 2019, Hearing Officer Peter Vaden issued his Decision, finding

that DCPS denied H.R. a FAPE by failing to include a teaching methodology or program for reading on his IEP to address his severe dyslexia and need for an intensive reading intervention.

17. Mr. Vaden noted that the DCPS IEP contained reading goals, but did not specify any reading program or methodology, or explain how the fifteen hours per week of specialized instruction would be tailored to address H.R.'s reading deficits. He found that H.R. had made academic progress since beginning at Lab and awarded the parents reimbursement for H.R.'s placement for the 2018-19 school year.

18. On August 6, 2019, DCPS convened a meeting to develop an IEP for H.R. for the 2019-20 school year. The final proposal provideed two-and-a-half hours per week of writing instruction outside of the general education setting, five hours of reading instruction outside of the general education setting, five hours of specialized instruction inside the general education setting, and 240 minutes per month of OT services.

19. The parents rejected the August 2019 IEP as inappropriate, noting it provided less special education services than the IEP Mr. Vaden had ruled was inappropriate for H.R.

20. On August 23, 2019, the parents filed another Due Process Appeal requesting that DCPS place and fund H.R. at the Lab School due to its failure to provide an appropriate IEP and placement for the 2019-20 school year. The parents invoked their right to "stay put" maintenance and H.R. continued at Lab funded by DCPS.

21. In December of 2019, the parties reached a settlement agreement and the parents withdrew their appeal. As part of the settlement agreement, DCPS issued a Location of Services letter placing H.R. at Lab for the remainder of the 2019-20 school year.

22. On April 7, 2020, DCPS convened a meeting to update H.R.'s IEP for the 2020-21 school year. After an initial review of the draft, it was apparent that DCPS had not

incorporated all available information, including an observation report by the family's educational consultant, Lisa Taylor-Cunningham, from November 2019.  Further, the parents had not received a copy of the DCPS observation of H.R. at Lab completed by Trudianne James, DCPS LEA Representative and Special Educator, on February 21, 2020.  DCPS agreed to provide a copy of Ms. James' observation report.

23. The DCPS IEP team relied upon Lab School's March 3rd IEP to develop its goals and objectives for the April 2020 IEP, but the draft document did not include several important pieces, including the provision of the Orton-Gillingham reading intervention and goals in areas of executive functioning.  Due to the incompleteness of the draft, the parties agreed to come back once all the information was incorporated into the IEP and ready for review by the team.

24. On April 9, 2020, the parents, through counsel, sent an email to Ms. James and requested that the IEP include the provision of the Orton-Gillingham reading intervention, as well as the goals in areas of Academic Behavior/Executive Functioning and "Social/Behavioral" from H.R.'s Lab IEP.  They also requested that a complete draft be provided to all the team members, including Lab staff and Ms. Taylor with sufficient time to review.  The revised draft IEP and Ms. James' observation report were sent to the parents on April 14, 2020, just one day prior to the rescheduled meeting.

25. On April 15, 2020, the team met again to finalize H.R.'s IEP for the 2020-21 school year.  The parents, through counsel, asked why the IEP did not include any executive functioning goals.  Ms. James responded that executive functioning was addressed in the classroom supports and services section of the DCPS IEP.  Lab School staff shared that H.R.'s needs in this area require separate goals to address his weaknesses.

26. The parents again requested that the Orton-Gillingham reading intervention be

specified on the IEP, which DCPS declined to do, despite Mr. Vaden's HOD which found the DCPS IEP inappropriate due to its failure to specify a reading program or methodology.

27. Upon discussion of the service hours, DCPS proposed 15 hours of specialized instruction outside of the general education setting, and one hour of direct OT per week. The parents expressed their disagreement with this proposal, specifically given Mr. Vaden's HOD which found the previous IEP, with the same amount of service hours, inappropriate. DCPS disagreed with this assertion.

28. The DCPS team asked if Lab School had a plan to integrate H.R. into the general education setting. The parents, Ms. Taylor, and Lab School all stated that H.R. was making progress due to the intensive and comprehensive support he was receiving at Lab and was not ready to attend the general education setting yet.

29. DCPS concluded the meeting by continuing to assert that H.R.'s in-boundary school, Murch ES, could implement the IEP, but provided no other information about what the program would look like.

30. The parents contacted Murch during the summer of 2020 seeking additional information about the proposed program for H.R. for the 2020-21 school year. They learned very little regarding the program at Murch and were unclear what the virtual format would look like due to the COVID-19 pandemic.

31. The parents filed another Due Process Appeal on August 27, 2020, due to DCPS' failure to propose an appropriate program for H.R. for the 2020-21 school year. The parents invoked their right to "stay put" maintenance under the IDEA, which was ordered by Hearing Officer Michael Lazan on January 11, 2021. H.R. remained funded at Lab throughout the pendency of the appeal.

32. A due process hearing was originally scheduled for December 7 and 8, 2020, but rescheduled to March 22 and 23, 2021 when the Hearing Officer became unavailable for the December dates. The parties were unable to complete the case on the March dates, requiring an additional three hearing days (April 1, 27, and May 14, 2021).

33. At the hearing, H.R.'s parents presented expert testimony from Lisa Taylor-Cunningham, their educational consultant, and Judy Shincarick, the Associate Head of the Elementary Division at the Lab School of Washington, as well as H.R.'s mother.

34. DCPS presented expert testimony from Anita Hughes, a DCPS social worker; Tina Nguyen, a DCPS psychologist; Veronique Moise, a DCPS Occupational Therapist; Selena Barlow, a DCPS CIEP team manager; Devario Hawkins, a special education coordinator at Murch Elementary; Sean Bradley, a DCPS compliance specialist; Regina Nadir, a DCPS social worker; Melissa Nolen, a special education teacher at Murch Elementary; and Nicole Manuel, a DCPS Central Office program specialist.

35. The parents and their witnesses provided testimony as to H.R.'s learning, attentional, and executive functioning disabilities and the significant impact on him in the classroom.

36. The school system's witnesses provided testimony regarding its proposal and its appropriateness for H.R., despite the very limited knowledge they actually had of him.

37. On April 7, 2021, H.R.'s DCPS IEP expired. On April 21, 2021, the parents filed a motion for directed verdict arguing that the issues before Mr. Lazan were now moot and there was no way for DCPS to meet its burden of persuasion.

38. On April 29, 2021, DCPS proposed a new IEP for the 2021-22 school year, providing H.R. with the same 15 hours per week of specialized instruction outside of the general education setting and 240 minutes per month of OT services.

39. On June 4, 2021, Mr. Lazan denied the parents' motion for a directed verdict, incorrectly stating that, "the school district is entitled to a decision on the merits because the HOD will likely have an effect on the stay-put rights of the parties in the future."

40. On June 8, 2021, H.R.'s parents filed a new Due Process Appeal against DCPS for its failure to propose an appropriate IEP and placement on April 29, 2021.

41. On June 9, 20201, the parents filed a Motion to Dismiss the August 2020 Due Process Appeal as moot, arguing that the new June 8, 2021 Due Process Appeal eliminated any need for Mr. Lazan to determine the appropriateness of the April 2020 DCPS IEP, according to his own Order on the parents' motion for a directed verdict.

42. The Hearing Officer issued his Decision on June 21, 2021, denying the parents' their requested relief.

43. The Hearing Officer failed to rule on the parents' Motion to Dismiss as Moot, and instead applied incorrect analysis to the relevant case law to incorrectly find the Due Process Appeal still actionable.

44. The Hearing Officer improperly concluded that DCPS met its burden of persuasion by finding that H.R.'s April 2020 IEP provided him with meaningful benefit and that it was reasonably calculated for him to make appropriate educational progress.

45. The Hearing Officer improperly concluded that the DCPS proposed educational placement at Murch was appropriate for H.R.

46. The Hearing Officer erroneously dismissed petitioners' claim that the proposed IEP was inappropriate for failing to contain specific executive functioning goals.

47. The Hearing Officer erroneously concluded that H.R. could appropriately learn in some general education classes.

48. The Hearing Officer improperly ignored relevant testimony regarding H.R.'s learning disabilities, executive functioning, attentional difficulties which impede his ability to participate in large, comprehensive school settings.

49. The Hearing Officer inproperly dismissed the parents' claim that the DCPS proposed placement was inappropriate.

50. The Hearing Officer improperly dismissed the parents' claim that DCPS failed to provide them with adequate information about the proposed educational placement.

51. The Hearing Officer gave dispositive deference to DCPS' witnesses and their opinions over the unrebutted expert opinions of the parents' witnesses.

52. The Hearing Officer improperly concluded that the parents' witnesses were less persuasive and improperly discounted the opinions of those witnesses.

53. The Hearing Officer misstated the evidence.

54. The Hearing Officer's Decision contains multiple errors of fact and law.

55. Many of the Hearing Officer's findings of fact are not regularly made.

56. The Hearing Officer applied incorrect legal standards in reaching his Decision.

57. The parents are aggrieved by the Hearing Officer's Decision.

58. The parents have exhausted their administrative remedies.

59. H.R. is entitled to current educational placement or "stay-put" protection under the IDEA throughout the pendency of this action.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

60. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 59.

61. The Hearing Officer's committed error in not finding the Due Process Appeal moot..

62. Defendant's failure to provide H.R. with a Free Appropriate Public Education violates plaintiffs' rights under the IDEA and District of Columbia law.

## COUNT II

(Failure to Offer Appropriate Program and Placement)

63. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 59.

64. The failure of the Hearing Officer to order defendant to place and fund H.R. in an appropriate program and placement violates the IDEA and District of Columbia law.

## COUNT III

(Failure of the Hearing Officer to Render a Proper Decision)

65. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 59.

66. The Hearing Officer committed error and violated plaintiffs' due process rights under the IDEA and District of Columbia law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

67. The Hearing Officer committed error and violated the plaintiffs' due process rights under the IDEA and District of Columbia law by failing to apply correct legal standards.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court:

1. Issue judgment for plaintiffs and against defendant;

2. Issue declaratory relief that defendant violated plaintiffs' rights under applicable law;

3. Order defendant to place and fund H.R. at the Lab School of Washington and declare it to be his current educational placement under the IDEA;

4. Order defendant to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

5. Award any other relief that this Court deems just.


Respectfully Submitted,

   /s/ Michael J. Eig

| | |
|---|---|
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Matthew B. Bogin | #911552 |
| Meghan M. Probert | #1004929 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

*Counsel for Plaintiffs*

12