UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| H.R. et al., <br><br>     *Plaintiffs*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br>     *Defendant*. | Civil Action No. 21-1856 (TJK) |

## MEMORANDUM OPINION

Plaintiffs H.R. and his parents sue the District of Columbia, alleging that the District has failed to provide him with a free appropriate education in violation of the Individuals with Disabilities Education Act. Magistrate Judge Robin M. Meriweather recommended that the Court deny Plaintiffs' motion for summary judgment and grant Defendant's cross-motion for the same. Plaintiffs timely objected on several grounds. For the reasons explained below, the Court will overrule the objections, adopt Judge Meriweather's Report and Recommendation in full, grant Defendants' motion, deny Plaintiffs', and enter judgment for the District.

### I.  Background

#### A.  Legal Background

Under the Individuals with Disabilities Education Act ("IDEA"), to receive federal education funding, school districts must adopt procedures to ensure all children with disabilities receive a free appropriate public education ("FAPE"). 20 U.S.C. § 1412. To that end, an individualized education program ("IEP") is developed annually for each disabled child in the school district. *Id.* §§ 1412(a)(4), 1414(d). If any party disagrees with the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," the party is entitled to an "impartial due process hearing." *Id.* §§ 1415(b)(6), 1415(f). There, the

parties may present evidence and expert testimony about the child's educational and functional needs to an independent hearing officer, who issues a "determination" about whether the child was denied a FAPE and, if so, orders an appropriate remedy. *Id.* §§ 1415(f), 1415(h). That decision may be challenged in state or federal court. *Id.* § 1415(i)(2). During the resolution of such a proceeding, the IDEA's "stay put" provision allows the child to "remain in the then-current educational placement." *Id.* § 1415(j).

### B. Factual and Procedural Background

The factual and procedural history of this case is, unfortunately, long and tortuous. In January 2018, while H.R. was in first grade, he was diagnosed with Attention Deficit Hyperactivity Disorder, Specific Learning Disability with impairment in reading, and Developmental Coordination Disorder. ECF No. 33 at 4–5. The District then developed an IEP for H.R. for the 2018–19 school year, calling for, among other things, ten hours of specialized instruction outside general education every week. *Id.* at 5. But Plaintiffs, unconvinced that H.R.'s public school could adequately support his needs, enrolled him in a private special education school, the Lab School of Washington, where he remains. *Id.* at 5, 13. H.R.'s parents also filed an administrative complaint against the District. *Id.* at 5. A hearing officer determined that the District had denied H.R. a FAPE and ordered it to reimburse his private school tuition, though he found that H.R. did not require a full-time special education setting going forward. *Id.* at 5–6.

Each year since then, the District has developed a new IEP for H.R., and in each, it has proposed that H.R. receive 15 hours of specialized instruction each week and that he be placed in his neighborhood public school. ECF No. 33 at 6–12. To begin, in 2019, the District developed an IEP for H.R. for the 2019–20 school year. *Id.* at 6. Again, H.R.'s parents filed an administrative complaint after deciding to keep H.R. at the Lab School, and the parties reached a settlement providing that the District would pay H.R.'s tuition at the Lab School for that year. *Id.*

2

In April 2020, the District developed a new IEP for the 2020–21 school year, again calling for 15 hours per week of specialized instruction and that H.R. be placed in public school. ECF No. 33 at 6. This is the first of the two IEPs now the subject of this litigation. In August 2020, Plaintiffs filed an administrative complaint challenging that IEP. *Id.* at 7. Plaintiffs also moved for "stay put" relief based on the 2019 settlement agreement, which the hearing officer granted, enabling H.R. to remain at the Lab School. *Id.* The "due process" hearing on Plaintiffs' August 2020 complaint began in March 2021, but did not conclude until June 2021. *Id.* By that time, the IEP for the 2020–21 school year had expired, and the District had already developed a new IEP for the 2021–22 school year. *Id.* That is the second IEP challenged in this suit.

A flurry of activity flowed from that procedural posture. Plaintiffs filed a motion arguing that the August 2020 complaint over the IEP for the 2020–21 school year was moot, which a hearing officer denied on June 4, 2021. ECF No. 33 at 7–8. A few days later, on June 8, 2021, Plaintiffs filed a new administrative complaint challenging the IEP for the 2021–22 school year and invoked H.R.'s stay-put rights for that year. *Id.* at 8. On June 21, 2021, the hearing officer issued a decision on the August 2020 complaint over the IEP for the 2020–21 school year, concluding again that the case was not moot and upholding H.R.'s IEP for that year. *Id.* at 8–9.

On July 12, 2021, Plaintiffs appealed that decision by suing in this Court. ECF No. 1. And the next day, the Court referred it to Judge Meriweather for full case management. Minute Order of July 13, 2021. A few months later, in December 2021, Plaintiffs moved for a preliminary injunction to enforce H.R.'s stay-put rights at the Lab School, which Judge Meriweather recommended be granted. ECF Nos. 4, 8. The Court adopted that recommendation, so H.R.'s placement at the Lab School remains funded by the District while this suit is pending. ECF No. 9.

Still, administrative proceedings continued below while the case was pending before Judge Meriweather. After the Court resolved the preliminary injunction, Plaintiffs—having filed suit

3

over the hearing officer's decision on the IEP for the 2020–21 school year—withdrew their complaint about the 2021–22 one. ECF No. 33 at 10. But in December 2021, the District filed its own administrative complaint about the 2021–22 IEP, asserting that it was appropriate and seeking an order confirming that the Lab School was not a proper placement. *Id.* And while that complaint was pending, in March 2022, the District issued a new IEP for the 2022–23 school year, and Plaintiffs moved to dismiss the District's December complaint on mootness grounds. *Id.* at 10–11. A new hearing officer (assigned to this second due process proceeding) denied that motion and determined that the 2021–22 IEP provided H.R. a FAPE. *Id.* at 11. Thus, in July 2022, Plaintiffs amended their complaint before this Court to add a challenge to the District's proposed IEP and placement for the 2021–22 school year. ECF No. 15. Thus, the operative complaint now includes challenges to both H.R.'s IEPs for both the 2020–21 and 2021–22 school years.

In December 2022, Plaintiffs moved for summary judgment before Judge Meriweather, and in April 2023, the District cross-moved. ECF Nos. 21, 26. Since then, the District developed a new IEP for the 2023–24 school year. *See* ECF No. 33 at 12–13. The District again proposed 15 hours per week of specialized instruction outside the general education classroom and that H.R. enroll in public school, among other things. *Id.* H.R.'s proposed placement is now the local middle school, rather than elementary school, given his age and grade level. *Id.*; *see also* ECF Nos. 31, 32. Under the hearing officer's stay-put order, H.R. has remained at the Lab School. ECF No. 33 at 13.

In March 2024, Judge Meriweather issued a Report and Recommendation recommending that the Court deny Plaintiffs' motion for summary judgment and grant Defendant's cross-motion. ECF No. 33. Plaintiffs timely objected, ECF No. 35, and Defendant opposes, ECF No. 36.

## II. Legal Standard

Under Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to a magistrate judge's proposed findings and recommendations. The Court must then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* LCvR 72.3(b). The Court may then "accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* LCvR 72.3(c). The Court reviews those portions of the report and recommendation without specific objections for "clear error." *Tsige v. Fac. Prac. Plan*, No. 13-cv-7148, 2014 WL 1378310, at *1 (D.C. Cir. Mar. 25, 2014).

## III. Analysis

Plaintiffs object to Judge Meriweather's Report and Recommendation on three grounds: that (1) because the challenged IEPs are no longer in effect, the case is moot; (2) Judge Meriweather failed to appropriately consider witness testimony and evidence; and (3) she erred in finding that the District's proposed IEPs were appropriate. For the reasons explained below, the Court disagrees, and overrules each objection.

### A. Mootness

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *United Bhd. of Carpenters and Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. & Can.*, 721 F.3d 678, 687 (D.C. Cir. 2013). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). A case may be rendered moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC*, 1 F.4th 16, 21–22 (D.C. Cir. 2021) (quoting *Clarke v.*

5

*United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)). In the IDEA context, "in appropriate circumstances, the development of a new IEP may render a challenge to a prior IEP moot, for example, when the new IEP resolves the previous subject of dispute." *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 14 (D.D.C. 2017).

Both hearing officers considering the 2020–21 and 2021–22 IEPs concluded that the disputes before them were not moot. ECF No. 16-1 at 22–25; ECF No. 20-1 at 153–54. Judge Meriweather agreed that Plaintiffs' August 2020 administrative complaint challenging the IEP for the 2020–21 school year was not moot, and neither was this suit. ECF No. 33 at 16–34. And while Judge Meriweather determined that the District's December 2021 administrative complaint about the IEP for the 2021–22 school year *was* technically moot,[1] she still concluded that both the challenges to the 2020–21 and 2021–22 IEPs, as well as this case, were subject to the "capable of repetition yet evading review exception" to mootness. *Id.*

Plaintiffs argue that their challenges to H.R.'s IEPs for the 2020–21 and 2021–22 school years (and thus this case) are moot because "[i]n both cases, the IEP on appeal had been reviewed and replaced with an updated IEP and a placement proposal." ECF No. 21 at 12. Moreover, they say, H.R. has a new proposed placement at a neighborhood middle school, so a ruling here would have no more than a speculative chance of affecting H.R.'s education moving forward, because the challenged 2020–21 and 2021–22 IEPs were specific to elementary education. ECF No. 35 at 2–3.

---

[1] Unlike the August 2020 administrative complaint, the December 2021 complaint about the IEP for the 2021–22 school year was brought by the District. The hearing officer had reasoned that it was not moot because a finding on the appropriateness of the 2021–22 IEP would determine the District's obligation to fund H.R.'s placement for the 2021–22 school year. ECF No. 20-1 at 153–54. Judge Meriweather disagreed, but neither party objects to her Report and Recommendation on that point. ECF No. 33 at 31–32.

The Court agrees with Judge Meriweather that this case is not moot. While this appeal has been pending, Plaintiffs continue to seek the same relief they sought in the 2020–21 and 2021–22 IEPs, and which is the subject of this dispute. They assert that H.R. requires placement in a full-time specialized education program, while the District continues to propose only 15 hours per week of specialized instruction. ECF No. 31 at 2; ECF No. 32 at 5. And more specifically, Plaintiffs continue to demand placement at the Lab School. ECF No. 35 at 1. Because the dispute remains ongoing, the development of a new IEP does not render the case moot. *See N.W.*, 253 F. Supp. 3d at 14 (reasoning that the development of a new IEP moots a case only if it resolves the subject of the dispute); *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 39–40 (D.D.C. 2013) (similar). Moreover, that the District is now proposing placement at a middle school rather than an elementary school does not, itself, moot the dispute, given that Plaintiffs continue to seek placement at the Lab School, and thus "any single claim for relief remain[s] viable." *Morris v. District of Columbia*, 38 F. Supp. 3d 57, 66 (D.D.C. 2014) (internal quotation omitted). And Plaintiffs have not explained in a more than "cursory fashion" why "a new IEP and a new location of services. . . resolves or avoids the issues of dispute here." *See N.W.*, 253 F. Supp. 3d at 14 n.9.

For this same reasons, Plaintiffs' August 2020 administrative complaint challenging the IEP for the 2020–21 school year is not moot. The hearing on that complaint did not take place until March 2021, and the motion was not resolved until June of that year, by which time, after new testing, the District proposed a new IEP for the 2021–22 school year. ECF No. 33 at 7–9. Plaintiffs complain that "the delays in completing that hearing before the expiration of the April 2020 IEP [for the 2020–21 school year] were clearly not the fault of plaintiffs." ECF No. 35 at 3. But Judge Meriweather did not ascribe any fault to them, and regardless, fault for the delay is not relevant to whether the dispute is moot. Plaintiffs make no effort to explain why the new testing caused the case to be moot, either.

The Court also agrees with Judge Meriweather that the case, and Plaintiffs' 2020 administrative complaint challenging the IEP for the 2020–21 school year, are not moot because resolving them would have a more-than-speculative chance of affecting H.R.'s stay-put rights. ECF No. 33 at 20. As is, H.R.'s parents invoke the 2019 agreement to establish his stay-put rights at the Lab School. Judge Meriweather reasoned that if she were to affirm the hearing officer's determination about the 2020–21 IEP—which places H.R. in his neighborhood public school—then that IEP would govern H.R.'s stay-put placement in any later proceedings. *Id.* And because Plaintiffs "have consistently challenged H.R.'s IEP for the last five years and used the stay-put provision and the 2019 [hearing officer determination] to maintain [District of Columbia Public Schools] funding of H.R.'s enrollment at Lab, and are likely to continue to do so if their demands are not met," this is yet another reason this case presents a live controversy. *Id.* Plaintiffs object, arguing that any decision on H.R.'s stay-put placement would be merely an "advisory opinion." ECF No. 35 at 3. But both parties have a legally cognizable interest in the outcome: H.R. in his stay-put right, and the District in any legal defense to stay-put funding.

In sum, to seek dismissal of the case as moot, Plaintiffs "must show not only that a new IEP has been developed but that it resolves or avoids the issues of dispute here." *N.W.*, 253 F. Supp. 3d at 14 n.9. They have not made that showing, and so this case is not moot.

In any event, once again the Court agrees with Judge Meriweather that, even if this case and both underlying administrative disputes *are* technically moot, the "capable of repetition yet evading review exception" to mootness applies to them. That exception applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis v. FEC*, 554 U.S. 724, 735 (2008) (citation and internal quotation marks omitted). The first prong is satisfied given that "there can be no doubt that a one-year placement

8

order under the IDEA is, by its nature, 'too short [in duration] to be fully litigated prior to its . . . expiration.'" *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (citation omitted). Plaintiffs challenge only the second prong, arguing that Judge Meriweather overlooked differences in H.R.'s IEPs, "most importantly that he is now a middle school student." ECF No. 35 at 4. But as Judge Meriweather reasoned, every one of H.R.'s IEPs since 2018 has called for 15 hours per week of specialized instruction. ECF No. 33 at 22. And H.R.'s parents continue to object to his IEPs on those grounds, that he requires full-time specialized education services. *See* ECF No. 31 at 2. What that specialized instruction looks like may change in a middle school environment. But Plaintiffs point to no legal authority or anything in the record to support their assertion that the change in location of services means this case or either of the parties' administrative complaints is not capable of repetition.

      **B.**    **Witness Credibility and Testimony**

Plaintiffs next object to Judge Meriweather's adoption of the hearing officer's factual determinations, arguing that she failed to appropriately consider witness testimony and evidence. Their objections on this point are threefold: (1) that Judge Meriweather misconstrued the importance of witnesses' personal knowledge of H.R., (2) that she failed to consider the lack of explanation by the District for its proposed IEP, and (3) that she misapplied the burden of proof. The Court considers each in turn.

First, Plaintiffs argue that the hearing officers and Judge Meriweather gave undue weight to the District's witnesses who had not personally observed H.R. in an educational setting or who had not done so for many years, while their own witness had conducted a psychological evaluation of H.R. in 2021. ECF No. 35 at 4–6. They criticize, in particular, Judge Meriweather's reasoning that Plaintiffs' "focus on the lack of recent [District] witness observations of H.R. has no bearing

9

on the credibility of the testimony considered by [a hearing officer] or the weight afforded to each witness." ECF No. 33 at 36; ECF No. 35 at 4.

But Judge Meriweather correctly noted that "a hearing officer is entitled to make reasonable credibility determinations and, in the absence of extrinsic evidence to the contrary, those determinations are entitled to deference from the Court," ECF No. 33 at 34 (quoting *Wimbish v. District of Columbia*, 381 F. Supp. 3d 22, 29 n.5 (D.D.C. 2019)), so long as they do not "lack[] reasoned and specific findings," *id.* at 35 (quoting *McNeil v. District of Columbia*, 217 F. Supp. 3d 107, 114 (D.D.C. 2016)). And she recognized that courts should "not substitute their assessment of the evidence for that of hearing officers." *Id.* (quoting *Options Pub. Charter Sch. v. Howe ex rel. A.H.*, 512 F. Supp. 2d 55, 57 (D.D.C. 2007). The Court finds that she applied the appropriate deference by not substituting any personal assessment of the evidence she may have had.

As for the two District witnesses who are the focus of Plaintiffs' objection, Judge Meriweather recounted how the hearing officer considering H.R.'s IEP for the 2020–21 school year "addressed this very credibility objection," "specifying that [the officer] credited the testimony of these witnesses regarding their opinions on whether H.R. could manage the general education setting for part of the school day because they were the *only* witnesses to ever observe H.R. in the general education setting, which necessarily was in the past because H.R. [had] remained in a special education setting at Lab since the 2018–19 school year." ECF No. 33 at 36–37.[2] And to

---

[2] Plaintiffs respond by pointing out that those witnesses observed H.R. in 2018 while H.R. was in a general education setting in a small private school, and so have limited relevance to the District's proposed public middle school placement. ECF No. 35 at 5. But the hearing officer specifically acknowledged that the witnesses' observations of H.R. in a general education setting "necessarily" were somewhat dated, given that H.R. had been at the Lab School for years, but that they were the best evidence available of how H.R. might do in a general education setting. *See* ECF No. 33 at 36–37. The hearing officer had a right to make his own reasonable credibility determinations, and with no extrinsic evidence to the contrary, the Court also defers to his judgment.

10

the extent Plaintiffs maintain their challenges to the rest of the District's witnesses, their testimony required no direct observation or personal knowledge of H.R.—to the contrary, they offered testimony on topics such as the purpose and uses of certain educational programs. *Id.* at 37. Likewise, as Judge Meriweather further explained, the hearing officer considering the IEP for the 2021–22 school year "incorporate[d] testimony of [District] witnesses . . . regarding their first-hand classroom observations of H.R.," and found Plaintiffs' witness testimony "predicting how H.R. would behave in a general education classroom 'purely speculative,' for neither had observed H.R. in that setting and their prediction was contrary to past observations of H.R. in the general education classroom." *Id.* at 38–39 (quoting ECF No. 18-1 at 27–28). Plaintiffs do not explain why that was error, and the Court is not persuaded that Judge Meriweather erred in adopting the hearing officers' credibility determinations on these points.

Next, Plaintiffs argue that the hearing officers and Judge Meriweather failed to consider what they perceive as lack of evidence for the District's proposed amount of only 15 hours of specialized instruction, particularly given the evidence that H.R. had done well at the Lab School in a full-time specialized setting.[3]  ECF No. 35 at 7.

They are right that "[a] reviewing court may fairly expect [the hearing officer and school officials] to be able to offer a cogent and responsive explanation for their decisions." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 404 (2017). But as Judge

---

[3] In addition, that the District's proposed number of hours of specialized instruction remained the same year after year, despite H.R.'s progress, does not in itself cast doubt on the credibility of the District's position that "the supports provided in the IEP were sufficient." And without "non-testimonial, extrinsic evidence in the record [that] would *justify* a contrary conclusion," the Court "must accept the state agency's credibility determinations." *J.N. v. District of Columbia*, 677 F. Supp. 2d 314, 322 (D.D.C. 2010) (citation omitted); *see* ECF No. 33 at 50, 56. Plaintiffs point to nothing to the contrary.

Meriweather explained, here—on the issue of how much specialized instruction H.R required—they did just that. The hearing officer who considered the IEP for the 2020–21 school year reasoned that H.R. "had mastered many of [his] reading goals, suggesting that [he] could now understand the reading materials in a general education classroom." ECF No. 16-1 at 27. And he noted that, while in a general education setting, H.R. had "participated in classroom activities and lessons, required minimal verbal prompting and redirection, and interacted appropriately with peers." *Id.* at 28. One witness "agreed with the recommendation for fifteen hours of specialized instruction outside general education in the IEP," and another "explained [fifteen hours] were enough specialized instructional hours to implement the IEP goals." *Id.*; *see also* ECF No. 33 at 37–38, 51–52. And the hearing officer considering the IEP for the 2021–22 school year, likewise, found that H.R.'s "perform[ance] on grade level for two years and his . . . recent evaluations do not support the contention that he needs intensive intervention in an academic cocoon to succeed." ECF No. 33 at 52 (quoting ECF No. 18-1 at 28).

True, Plaintiffs proffered experts and other evidence supporting the contrary view that H.R. needs all-day specialized instruction in a small group setting. But Judge Meriweather appropriately found that "[a]ll of this testimony is based on conjecture based on the unsupported assumption that because H.R. had progressed in smaller class sizes, he could not progress in larger ones," and much of the expert testimony "is conclusory and not based on concrete evidence, like an evaluation or testing." ECF No. 33 at 54–55. In fact, she reasoned, Plaintiffs "failed to identify evaluations or studies providing concrete evidence that H.R. required full-time special education to progress . . . as opposed to the proposed fifteen hours." *Id.* at 53–54. To be sure, one of Plaintiffs' experts had conducted a psychological evaluation of H.R. in 2021, but Judge Meriweather correctly noted that her testimony that H.R. needed full-time specialized care because he "has such complicated learning needs" and "is succeeding [at the Lab School] because of the features of that

12

environment, that it's [a] small group, everything is intensely structured," was based on conjecture about how he would do outside that specific setting. *Id.* (quoting ECF No. 20-1 at 553–54). And much of the "witnesses' rationales for full-time special education were already addressed in the IEPs," which account for 15 hours of specialized instruction outside of general education and executive functions supports. *Id.* at 55.

Finally, Plaintiffs argue that Judge Meriweather improperly shifted the burden to Plaintiffs to show that H.R. needed full-time educational services. ECF No. 35 at 6. Not so. Ordinarily, the "burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005). Under District law, in special education due process hearings, the party who filed for the due process hearing bears the burden of production and persuasion except, as here, "[w]here there is a dispute about the appropriateness of the child's individual educational program or placement, . . . the public agency shall hold the burden of persuasion on the appropriateness of the existing or proposed program or placement." D.C. Code § 38-2571.03(6)(A)(i). Even then, "the party requesting the due process hearing shall retain the burden of production and shall establish a prima facie case before the burden of persuasion falls on the public agency." *Id.*

In her recommendation to deny Plaintiffs' motion for summary judgment and to grant Defendant's cross-motion, and in adopting the hearing officers' credibility determinations, Judge Meriweather often pointed to the lack of evidence in support of Plaintiffs' position. *See, e.g.*, ECF No. 33 at 54–55. But it was not inappropriate burden-shifting, in the hearing officers' factfinding role, for them to assess the evidence and conclude it did not support Plaintiffs' case. *See Edward M.-R. by & through T.R.-M. v. District of Columbia*, 660 F. Supp. 3d 82, 107 (D.D.C. 2023) (hearing officer did not shift burden when providing "broader context of explaining why the evidence, as a whole, did not support Plaintiffs' arguments"); *A.D. v. District of Columbia*, No. 20-cv-2765

13

(BAH), 2022 WL 683570, at *9 (D.D.C. Mar. 8, 2022). Similarly, it was not inappropriate burden-shifting for Judge Meriweather to conclude that Plaintiffs' evidence was vague, conclusory, and in the end, unpersuasive.

As one example, Judge Meriweather pointed to one witness's testimony that "it's so clear that [H.R.] requires small group" and another who "didn't think H.R. would do well," neither of which was supported by specific facts. ECF No. 33 at 54 (quoting ECF No. 20-1 at 495, 607–08) (cleaned up). And as noted above, she concluded that the testimony was "conjecture based on the unsupported assumption that because H.R. had progressed in smaller class sizes, he could not progress in larger ones." *Id.* at 54–55. Her conclusions are based on record evidence and adequately explained, and she did not erroneously shift the burden by suggesting that Plaintiffs' witnesses had not "adequately explained" why full-time placement was necessary. *See id.* at 54.

C. **The Appropriateness of H.R.'s IEPs**

Plaintiffs' final objection is that Judge Meriweather erred in finding the District's proposed IEPs to be appropriate, as the hearing officers had also found. ECF No. 35 at 7–10. They say the District should have been required to specify the reading program that would be provided to H.R. as part of an IEP, and that neither the 2020–21 nor 2021–22 IEP adequately addressed his needs in reading and executive functioning. *Id.* The Court disagrees.

As for reading, Judge Meriweather explained that the District "generally maintains discretion in determining instructional methodology and the IDEA does not require IEPs to provide a specific program or employee a specific methodology in educating a student." ECF No. 33 at 44. She noted that the hearing officers' conclusions that "the District did not propose including the Orton-Gillingham method primarily because of H.R.'s strong progress in reading since the implementation of the program and his ability to read on grade-level" were "well reasoned and supported by the record." *Id.* at 45. And she rejected Plaintiffs' argument that the IEPs "did not adequately

14

specify how H.R.'s reading instruction would be provided" because they offer "the requisite level of specificity," namely, two reading goals and 15 hours per week of specialized instruction in a "structured classroom setting with limited distractions, when being introduced to new skills." *Id.* at 46 (also considering detail provided by prior written notices).

Simply put, the District was not required to include more detail in the IEP or prior written notices, so none of that was error. *See Jones v. District of Columbia*, No. 17-cv-1437 (RCL/RMM), 2018 WL 7286022, at *12 (D.D.C. Sept. 5, 2018), *report and recommendation adopted*, 2019 WL 532671, at *1 n.1 (D.D.C. Feb. 11, 2019) ("[T]he IEP is required to include at least a brief description of the [least restrictive environment]."); 20 U.S.C. § 1414(d)(1)(A)(i)(V) (an IEP must include "an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in the activities described in subclause (IV)(cc)"). And as Judge Meriweather correctly explained, "questions of methodology are for resolution by the States," *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982), and thus courts in this District have held that "questions about the methodology of instruction cannot be decided by a court," *R.B. v. District of Columbia*, No. 18-cv-662 (RMC), 2019 WL 4750410, at *13 (D.D.C. Sept. 30, 2019); *see* ECF No. 33 at 44–45.

Plaintiffs complain that the IEPs should have included the Orton-Gillingham reading program and required small class sizes because they attribute H.R.'s success at the Lab School to those two factors. ECF No. 35 at 8. But as Judge Meriweather explained, Plaintiffs did not provide any evidence to support their position that H.R.'s progress was because of small class sizes or that he still needed that particular reading methodology. ECF No. 33 at 41–45. Plaintiffs respond, as above, that Judge Meriweather misapplied the burden of proof by requiring Plaintiffs to provide evidence that H.R. required these two learning components, rather than placing the burden on the District to prove the opposite. ECF No. 35 at 8. But for the same reasons already explained above,

15

Judge Meriweather did not impermissibly shift the burden merely by assessing the evidence and concluding it did not support their arguments.

As for executive functioning, Judge Meriweather noted that courts "must give due weight to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education," and thus "[h]ow [the District] sought to address the executive functioning supports within the IEP was its prerogative." ECF No. 33 at 49 (internal quotation marks and citation omitted). And she adopted the hearing officers' determinations that although the IEPs for the 2020–21 and 2021–22 school years did not include specific goals and specialized instruction for H.R.'s executive functioning needs, those needs were adequately addressed elsewhere in the proposed IEPs. ECF No. 33 at 47–50.

Plaintiffs mainly fault Judge Meriweather for relying on *Z.B. v. District of Columbia*, 888 F.3d 515 (D.C. Cir. 2018), in which the Circuit held that a child was not denied a FAPE for a lack of executive functioning *goals* when executive functioning *skills* were addressed in other areas of the child's IEP. ECF No. 35 at 9–10; *see* ECF No. 33 at 49. In that case, the Court of Appeals found that the challenged IEP "did not deny Z.B. an appropriate education for want of an executive functioning goal, because [the District] addressed executive functioning skills within the IEP's treatment of other areas of concern." 888 F.3d at 527. Plaintiffs object that H.R.'s IEP "only has an executive functioning goal in the Motor Skills/Physical Development section of the IEP" and "[t]hat goal contains objectives for H.R. to complete a daily organizational checklist, positioning materials on his desk, and to optimize his attention to task." ECF No. 35 at 10. But as in *Z.B.*, Judge Meriweather found that H.R.'s executive functioning skills were adequately addressed in the IEPs. She pointed to witness testimony that District staff "typically treat executive functioning as a 'cross-cutting' factor, rather than in a separate section of the IEP" and that as a result, "accommodations in the IEP relating to chunking, visual timers, checklists, alternative seating

16

options, paper adjustments, and the like were designed to address executive functioning issues." ECF No. 33 at 48 (quoting ECF No. 16-1 at 26). Plaintiffs identify nothing further that would establish the inadequacy of the IEPs' executive functioning components.

### IV.    Conclusion

For all the above reasons, and upon consideration of the entire record, including the Report and Recommendation and Plaintiffs' objections thereto, the Court will adopt in its entirety Judge Meriweather's Report and Recommendation, grant Defendant's cross-motion for summary judgment, and deny Plaintiffs' motion for summary judgment. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 30, 2024